UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| COMMISSIONERS OF PUBLIC WORKS OF THE CITY OF CHARLESTON (d.b.a. Charleston Water System), Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>    vs.<br><br>DUDE PRODUCTS INC.,<br><br>            Defendant. | Civil Action No. ___2:24-cv-02935-RMG___<br><br><u>CLASS ACTION</u><br><br>CLASS ACTION COMPLAINT<br><br><br><br><br><u>JURY TRIAL DEMANDED</u> |

The Commissioners of Public Works of the City of Charleston (d.b.a. "Charleston Water System") ("Plaintiff") brings this action on behalf of itself and all other similarly situated entities that own and/or operate sewage or wastewater conveyance and treatment systems, including municipalities, authorities, and wastewater districts (collectively, "STP Operators"), and alleges upon information and belief, formed after an inquiry reasonable under the circumstances, except as to those allegations which pertain to the named Plaintiff (which are alleged on personal knowledge), as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action against defendant Dude Products Inc. ("Defendant" or "Dude Products") to seek injunctive relief from ongoing and recurring damage caused by Defendant's deceptive, improper or unlawful conduct in the design, marketing, manufacturing, distribution and/or sale of wipes labeled as "flushable" ("DUDE Wipes").  Purportedly flushable wipes (referred to herein as "Flushable Wipes") include all moist wipe products marketed and labeled as safe to flush, safe for plumbing, safe for sewer systems, and/or biodegradable.

2.      The term "flushable" is commonly defined and understood to mean suitable for disposal by flushing down a toilet.  For example, "flushability" is defined as: disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment.

3.      To be suitable for flushing, an item needs to be able to disperse into smaller pieces rapidly enough to pass through sewer systems and be appropriate for treatment.

4.      Toilet paper has historically been considered the benchmark for flushability because it begins to break apart upon contact with water.  Its small enough pieces pass through sewer and septic systems without causing clogs.  Defendant's Flushable Wipes, on the other hand,

do not perform as advertised or marketed. As a result, they do not disperse as effectively as toilet paper and can comingle to cause clogs and treatment problems, making them costly and difficult to manually remove. Flushable Wipes, which do not adequately disperse, should not be labeled as "flushable" or safe for sewer or septic systems.

5.    Because Defendant's Flushable Wipes are not in fact suitable for flushing, they have caused countless clogs and damage to Plaintiff, STP Operators, and consumers alike. Clogged sewer lines can also lead to other problems, such as causing spills to flow onto public and private property, as well as into lakes, rivers, and oceans, where they can harm public health and the environment. The Environmental Protection Agency has taken the stance that the public should not flush any type of wipe.[1] Local municipalities and governments spend millions of dollars a year to address and remediate sewer systems and repair plant equipment that has been damaged by "non-flushable items (like wet wipes)" and has warned, "[w]hen wipes and other stuff aren't busy making fatbergs in our sewers, they are wreaking havoc on our wastewater treatment plants! These materials don't break down in the sewer system like toilet paper, so they arrive at our plants jamming mechanisms, clogging pumps, and breaking critical machinery."[2]

6.    Absent Defendant's actions and marketing tactics, its Flushable Wipes would not be discarded in toilets and, in turn, would not damage, clog, and/or disrupt pump stations, lift stations, sewer lines and/or wastewater treatment plants' systems. As long as Defendant continues to claim that Flushable Wipes are "flushable," consumers will continue to use them in accordance

---

[1]    United States Environmental Protection Agency, *Is it okay to flush disinfecting wipes?*, https://www.epa.gov/coronavirus/it-okay-flush-disinfecting-wipes (last visited May 2, 2024). Unless otherwise noted, internal citations are omitted and emphasis is added throughout.

[2]    *Trash it. Don't Flush it.*, NYC ENVIRONMENTAL PROTECTION, https://www1.nyc.gov/site/dep/whats-new/trash-it-dont-flush-it.page?utm_source=FB&fbclid=IwAR39RXn1VE6ku-dzLbfdqZXa0uE5scaO_-CIZrPR-PETTvxw5ffpw8kEcyA (last visited May 2, 2024).

with Defendant's instructions and many may never realize the property damage and risks to public health and the environment caused by flushing Flushable Wipes.

7.     Through the ordinary and directed use of Defendant's Flushable Wipes, Plaintiff and other STP Operators experienced and will continue to experience clogging and other disruption of their sewage or wastewater treatment plants, pump stations, lift stations, and/or sewer lines due to consumers flushing Flushable Wipes as directed by Defendant.  Flushable Wipes will continue to create excessive maintenance and repair-related expenses borne by STP Operators, and ultimately, the public.  Wet wipes are costing an estimated "**billions of dollars a year in worldwide maintenance**"[3] and there is no end in sight.

8.     For the reasons detailed herein, Defendant's conduct constitutes nuisance, trespass, negligence, and strict products liability for defective design and failure to warn.

## THE PARTIES

### Plaintiff

9.     Plaintiff Commissioners of Public Works of the City of Charleston (doing business as Charleston Water System) is a corporate body politic formed pursuant to the South Carolina Code of Laws, Sections 5-31-210, -220, and -250.  It has its principal place of business at 103 St. Philip Street, Charleston, South Carolina 29403.  Plaintiff is, and was at all relevant times, a public water and wastewater utility providing clean water and sewer services to the Greater Charleston area.  Plaintiff provides water service through its Hanahan Water Treatment Plant, which produces high quality drinking water delivered to customers through 1,800 miles of water mains.  Plaintiff provides sewer service through 800 miles of collection mains, over 209 pump stations, and 12 miles of deep tunnels that carry wastewater to Plaintiff's Plum Island Wastewater Treatment Plant.

---

[3]     Matt Kessler, *Are Wet Wipes Wrecking the World's Sewers?*, THE ATLANTIC (Oct. 14, 2016),    https://www.theatlantic.com/science/archive/2016/10/are-wet-wipes-wrecking-the-worlds-sewers/504098/.

The Plum Island plant treats an average of 25 million gallons a day and discharges that highly treated water into Charleston harbor.  Plaintiff is committed to protecting public health and the environment, and maintaining reliable sewer services is integral to that goal.  Plaintiff has been and will continue to be burdened with unnecessary expenses in connection with repairs, maintenance and/or other damage to its sewage treatment plants caused by Defendant's design, distribution, manufacture, marketing and/or sale of Flushable Wipes.  Defendant's Flushable Wipes have caused sewer overflows (which put Plaintiff in violation of its federal and state sewerage permits), necessitated increased maintenance of Plaintiff's sewer system, damaged the system, and interfered with the treatment of wastewater at the Plum Island facility.

### Defendant

10.     Defendant Dude Products Inc. is an Illinois corporation headquartered in Chicago, Illinois.  The company markets personal care and consumer tissue products in a range of merchandise categories, including DUDE Wipes.  Dude Products manufactures Flushable Wipes through third parties.

11.     Defendant markets, distributes, and/or sells (directly or indirectly) wipes products labeled as being "flushable."  These Flushable Wipes have caused clogging and other damage to Plaintiff's and Class members' sewer systems.  Flushable Wipes sold by Defendant are widely available for sale in and around the City of Charleston, in South Carolina and throughout the United States.

12.     Defendant, upon becoming involved with the distributing, advertising, marketing and/or sale of Flushable Wipes, knew or should have known that their representations regarding Flushable Wipes have been and continue to be false and misleading.

### JURISDICTION AND VENUE

13.     The Court has jurisdiction under 28 U.S.C. §1332(d) – the Class Action Fairness Act of 2005 ("CAFA") – because the amount in controversy exceeds $5 million exclusive of

interest and costs, and this action is brought as a class action of more than 100 potential Class members.  Moreover, the Court has jurisdiction under CAFA because there is minimal diversity of citizenship between the Plaintiff and the Defendant.

14.    The amount in controversy exceeds the $5 million threshold under Section 1332(d) because the value of the injunctive relief sought would provide at least this much in value to members of the Classes (defined below).

15.    This Court also has jurisdiction over this matter, pursuant to 28 U.S.C. §1332(a), in that the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the Plaintiff and Defendant.

16.    Venue properly lies in this District pursuant to 28 U.S.C. §1391(b) and in the Charleston Division pursuant to Local Civ. Rule 3.01 (D.S.C.), because Plaintiff resides and Defendant resides, or is found, has their principal place of business, has an agent, or has transacted substantial business within the District of South Carolina within the meaning of 28 U.S.C. §1391(b) and the Charleston Division within the meaning of Local Civ. Rule 3.01 (D.S.C.) as defined in 28 U.S.C. §1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in the District of South Carolina and the Charleston Division.

## FACTUAL ALLEGATIONS

### Background

17.    Dude Products was founded in 2011.  Defendant first began selling a form of purportedly "flushable wipes" for "on-the-go" use in 2012 in low volumes.  In 2014, Defendant launched the DUDE Wipes Crib Edition, which contained a larger dispenser pack of Flushable Wipes for at-home use.  In 2015, Dude Products was featured on the television show, "Shark Tank," and received a $300,000 investment from Mark Cuban in exchange for 25% of the company.  Dude Products' sales increased from just $15.5 million in 2019 to $40 million in 2020.  That same year, the co-founders of Dude Products projected that their products would generate a

gross revenue of $67 million in 2021 alone.  By November 2021, DUDE Wipes co-founders proclaimed that they were "on track to pass Charmin in 2021 sales – which, they add[ed], would make them the country's second-biggest brand in the flushable wipes category, citing internal Nielsen data," second only to the category's biggest brand – Kimberly-Clark's Cottonelle flushable wipes.[4]  Midway through 2023, the company projected that it would reach $120 million in sales for the year.[5]

18.    The Flushable Wipes industry has grown at over twice the rate of all nonwovens and all nonwoven wipes.  In 2010, Flushable Wipes accounted for $796 million in sales, increasing to $1.4 billion in sales by 2015.[6]  Global Flushable Wipes sales reached $3.0 billion in 2022 and are projected to reach $5.1 billion by 2032.[7]  The growing popularity of personal care products is a major factor escalating Flushable Wipes market growth.[8]

19.    However, as the industry continues to grow, a fundamental product flaw has become more apparent and problematic – Defendant's Flushable Wipes are not in fact flushable under the municipal wastewater industry's flushability standard.  Indeed, given that "package

---

[4]    *Mark Cuban gave this start-up some valuable advice – here's what happened when its leaders didn't listen*, CNBC (Nov. 24, 2021), https://www.cnbc.com/2021/11/24/dude-wipes-founders-why-we-shouldve-followed-mark-cubans-top-advice.html.

[5]    *Dude Wipes Co-Founder Ryan Meegan Explains How to Build a Brand Identity That People Love*, INC. (Aug. 28, 2023), https://www.inc.com/sam-blum/dude-wipes-co-founder-ryan-meegan-branding.html.

[6]    *One of the most important trends in flushable wipes is the move away from "flushable by size" to truly dispersible wipes*, INNOVATION IN TEXTILES (Aug. 18, 2017), https://www.innovationintextiles.com/key-trends-driving-flushable-wipes-market/.

[7]    *Flushable Wipes Market to Grow at a CAGR of 5.3% from 2023-2031, Reaching US$ 5.1 Billion: As per TMR Study*, TRANSPARENCY MARKET RESEARCH (Apr. 11, 2203), https://www.globenewswire.com/news-release/2023/04/11/2644892/0/en/Flushable-Wipes-Market-to-Grow-at-a-CAGR-of-5-3-from-2023-2031-Reaching-US-5-1-Billion-As-per-TMR-Study.html.

[8]    *Id.*

labelling influences both consumers' decision to buy [wipes] and their choice of disposal methods,"[9] Flushable Wipes have been labeled public enemy No. 1 for water reclamation.

**Defendant's Wipes are Unsuitable for Flushing**

20.     The word "flushable" is commonly understood to mean "suitable for disposal by flushing down a toilet," meaning that it would not only clear the user's home plumbing system, but that it would not harm the downstream sewer system – whether municipal, septic or otherwise.

21.     Many items have been shown to clear a toilet, and perhaps even a home's plumbing system, that are not and should not be labeled as flushable, including golf balls and matchbox cars.[10]  Those items are not flushable, because, despite the fact that they might clear a toilet or a home piping system, they will not break down in the toilet, in the plumbing system, or at any point in the sewer system.  They will clog sewers and arrive intact at pump stations and/or downstream treatment facilities.

22.     A product labeled as "flushable" ***must break apart or disperse in a reasonable period of time***.  Defendant's Flushable Wipes do not break apart or disperse in a reasonable period of time, resulting in massive continuous damage, as described herein.

23.     The fact that Defendant's Flushable Wipes are not suitable for flushing down a toilet is also corroborated by the fact that they do not meet other international standards, including the published guidelines of the International Water Services Flushability Group ("IWSFG") – an

---

[9]     Darko Joksimovic, Anum Khan, Barry Orr, *Inappropriate disposal of 'flushable' consumer products – reasons for concern*, IWA PUBLISHING (Feb. 26, 2020), https://iwaponline.com/wst/article/81/1/102/72457/Inappropriate-disposal-of-flushable-consumer.

[10]     PlumberSurplus, *American Standard Champion4 Flushing Demo*, YOUTUBE, https://www.youtube.com/watch?v=gaWDH16SqVs (last visited May 2, 2024) (demonstrating an American Standard toilet's ability to clear 18 golf balls, at 0:45); Metcraft, *Flushing 40 Golf Balls*, YOUTUBE, https://www.youtube.com/watch?v=6Tk1I0u0SVs (last visited May 2, 2024) (demonstrating an Metcraft HET toilet's ability to clear 40 golf balls); 105.7 the Point, *Will it Flush – Matchbox Cars*, YOUTUBE, https://www.youtube.com/watch?v=xV_1K_znAoE (last visited May 2, 2024) (demonstrating Kohler toilet's ability to flush matchbox cars, at 1:58).

"international coalition of national and regional wastewater services' associations, organizations and individual wastewater services."[11]

24.    The IWSFG has published three specifications for determining "the criteria that a product should meet to be compatible with being flushed down a toilet."[12]  "Publicly Available Specification (PAS) 1," establishes five requirements, all of which must be met: environmental protection; toilet and drain line clearance; disintegration; settling; and biodisintegration.[13]  On information and belief, Defendant's Flushable Wipes violate these guidelines, which were established directly as a result of the wipe-related crisis many sewer operators are facing.

**Testing Highlights the Lack of Empirical Support
for Defendant's "Flushable" Claims**

25.    Plaintiff retained Barry Orr, the Sewer Compliance Officer and Sewer Outreach and Control Inspector for the City of London, Ontario and the Canadian Water and Wastewater Association representative on IWSFG, to perform flushability testing on Defendant's Flushable Wipes products and labelled as being flushable and safe for sewer systems.  Mr. Orr tested Defendant's products.  The testing was designed to determine whether the products are safe for wastewater infrastructure.  Mr. Orr performed the testing in the last quarter of 2023 in the flushability lab at Ryerson University in Toronto, Ontario.

26.    Mr. Orr's testing included subjecting Defendant's wipes to the toilet and drain line test, and evaluating the recaptured wipes using IWSFG's Public Available Specification ("PAS") 3 Slosh Box Disintegration Test ("IWSFG 2020: PAS 3"), which evaluates the wipes' likelihood

---

[11]    IWSFG, *Publicly Available Specification (PAS) 1: 2020 Criteria for Recognition as a Flushable Product* (Dec. 2020), https://www.iwsfg.org/wp-content/uploads/2021/06/IWSFG-PAS-1-Criteria-for-Recognition-as-a-Flushable-Product-2.pdf.

[12]    IWSFG, *IWSFG Flushability Specifications*, https://www.iwsfg.org/iwsfg-flushability-specification/ (last visited May 2, 2024).

[13]    PAS 1, *supra* note 11 at 8.

of causing harm to wastewater conveyance systems or treatment plants. If a wipe meets two criteria – line clearance and dispersibility – they are considered unlikely to cause harm. A result of at least 80% dispersibility is required to pass IWSFG 2020: PAS 3. According to Mr. Orr's testing, Defendant's Flushable Wipes failed the IWSFG 2020: PAS 3 test of 80% dispersibility and thus cannot be considered "flushable" under the IWSFG standard, as they are likely to cause harm to wastewater conveyance systems or treatment plants, and to add an additional expense to municipalities. The flushable DUDE Wipes product scored only 20.13% dispersibility. This is within the range of other manufacturers and retailers before they agreed to improve their products through litigation before this Court. In fact, many of those other defendants now have products that disperse in the over-90% range. Based on the significantly increasing Flushable Wipes market share that Defendant possesses and the fact that they do not adequately disperse in sewer systems, it is likely that Defendant's Flushable Wipes are a significant cause of wipes-related clogs, blockages, and increased maintenance and other costs.

**Plaintiff's Experience with Defendant's Wipes**

27.     Plaintiff is, and was at all relevant times, a public water and wastewater utility serving the Greater Charleston, South Carolina area.

28.     Plaintiff owns and/or operates two sewage treatment plants, the Plum Island Wastewater Treatment Plant, its main facility, and the Daniel Island Plant, a pre-treatment facility.

29.     Plaintiff provides its sewer service through 800 miles of collection mains, 209 wastewater pump stations, and 12 miles of deep tunnels that carry wastewater to the Plum Island Wastewater Treatment Plant.

30.     Defendant's Flushable Wipes are sold and used in Plaintiff's sewer service area.

31.     In addition to other expenses incurred related to Flushable Wipes, for example, in October 2018, Plaintiff incurred unnecessary expenses in connection with major maintenance of

its sewage facilities due to clogs caused by Flushable Wipes.  Divers made three separate dives, 90 feet down into the wet well of the main pump station bringing sewage to the plant, in order to remove a mass of wipes resulting from residents flushing Flushable Wipes down their toilets.[14] The massive 12-foot long clog containing Flushable Wipes put the plant in significant jeopardy of massive sewer overflows and cost Plaintiff more than $140,000 in damage and cleanup costs.[15]

32.     In response, Plaintiff actively addressed the issue on social media, attempting to inform the public that just because a wipe says it is "flushable," does not mean that it breaks down before reaching Plaintiff's system.  Indeed, they do not break down, as evidenced by the blockage.

33.     Mike Saia, Plaintiff's communications manager, stated, "all wipes will easily flush down your toilet, but that's where the unseen problems begin."[16]  He elaborated that problems occur because as customers flush the wipes, they are often covered in grease, oil, hair and waste, which coat them in a thick layer of grime and hinder them from breaking down, creating "ropelike clumps that have incredible strength."  When those clumps reach a choke point, such as a pump at a wet well in Charleston, they can completely disrupt the system.[17]

34.     Despite Plaintiff's efforts to spread awareness, the issue occurred again in June 2019, with Flushable Wipes blocking pumps in one of Plaintiff's wastewater processing tanks.

---

[14]     Drew Tripp, *'Flushable' Wipes Clog Charleston Water System Pipes Again, and the Photos are Gross*, ABC4 NEWS (June 18, 2019), https://abcnews4.com/news/local/flushable-wipes-clog-charleston-water-system-pipes-again-and-the-photos-are-gross.

[15]     Ryan W. Miller, *You're probably using disposable wipes wrong. How to avoid harming the planet, the sewers*, USA TODAY (Sept. 7, 2019), https://www.usatoday.com/story/news/nation/2019/09/07/disposable-wipes-can-impact-sewers-landfills-waterways-and-health/1777416001/.

[16]     *Id*.

[17]     *Id*.

Again, divers made three separate dives into 80-90 feet of sewage to remove the clog.[18]  The clog disrupted the sewage system and cost about $60,000 in response costs.[19]

35.    Plaintiff's employees routinely clean its wastewater collection system and remove large quantities of wipes from Plaintiff's sewers, pump stations, and other assets.  Baker S. Mordecai, P.E., Plaintiff's Director of the Wastewater Collection Department, believes that these wipes are a combination of flushable and non-flushable wipes, and that the related blockages are an ongoing problem, can occur at any time, and may lead to system reliability failures and sewer overflows into public and private property, as well as area waterways.

36.    Plaintiff has invested more than $2 million to install a Supervisory Control and Data Acquisition ("SCADA") system at each of its 213 pump stations, to allow for continuous remote monitoring of each pump station to provide early notification of potential wipe-related clogs. Plaintiff has also installed screens and/or bar screen overlays within approach channels at vortexes to capture and remove wipes, which cost $120,000 in the past five years.

37.    Plaintiff has incurred and anticipates incurring expenses in connection with repairs, maintenance, and/or other damage to its sewage system, including pump stations and its treatment plant, and faces the continued threat of further repairs, maintenance and/or other damage, caused by Defendant's design, manufacturing, marketing, distribution and/or sale of Flushable Wipes, including given the growth of Defendant's sales of DUDE Wipes in recent years, and their corresponding outsized market share in the Flushable Wipes industry.  Given this market share, and recent settlements with retailers and/or manufacturers of most major Flushable Wipes products on the market that have required or will likely require those products to meet the wastewater

---

[18]    Alissa Holmes, *For second time, 'flushable wipes' cause major clog at Charleston Water System*, Live5WCSC (June 19, 2019), https://www.live5news.com/2019/06/19/second-time-flushable-wipes-cause-major-clog-charleston-water-system/.

[19]    *See* Miller, *supra* note 15.

industry's preferred flushability specifications, Plaintiff anticipates continuing to incur such expenses and continued damage specifically from the sale of Defendant's Flushable Wipes.

**Flushable Wipes Wreak Havoc on Sewers and Sewage
Treatment Facilities Throughout South Carolina and the Country**

38.    According to sewer system officials from across the country, Flushable Wipes wreak havoc on pumps and machinery in sewers and/or wastewater treatment plants and are a major reason why wastewater systems clog.  Such clogs trigger overflows of untreated sewage to public and private property as well as waterbodies.  Even if Flushable Wipes make it through home plumbing systems, if they do not fully disintegrate they will inevitably become so comingled and intertwined that it has been difficult to distinguish one wipe from another.

39.    Certain STP Operators have purchased and installed grinder pumps, which act like garbage disposals for tearing up any solid debris flowing through sewage.  These grinders are often ineffective at processing Flushable Wipes because the wipe material or fabric gums-up the machinery once inside the grinders.  Although grinders are capable of tearing through pieces of wood, Flushable Wipes can defeat them by getting snagged on various parts of the grinder and building up until the grinder is completely clogged and inoperable.

40.    For example, New York City reportedly spends a staggering $18.8 million *per year* to "degrease the sewers, deal with damage caused by sewer backups, and repair our plant equipment that has been damaged by non-flushable items (like wet wipes) and transport those items to landfill."[20]  The City directly warns the public against the directed use of Flushable Wipes and states that it can cost between $10,000 and $15,000 to repair a sewer line.[21]  In Pennsylvania, in April 2020, the *Bedford Gazette* reported that "'Flushable' wipes, along with [other] wipes, are

---

[20]    *Trash it. Don't Flush it.*, *supra* note 2.

[21]    *Id.*

clogging pipes and sewer lines, and especially pumps at sewer treatment facilities."[22]  Doug Vitovich, facilities manager for Chestnut Ridge Municipal Authority in Pennsylvania, "issued a plea [] for people to stop putting the disposable wipes into the system."  "'People need to realize the damage it can do to any wastewater treatment facility,'" Vitovich said.  Vitovich explained that "the problem with the 'flushable' wipes is not a new one . . . This has been an ongoing problem . . . ***They don't break up the way manufacturers claim they do***."[23]

41.    A spokesperson for Indian River County in Florida said that an increase in required maintenance of the wastewater pumps was, at least in part, "attributed to people flushing things that shouldn't be flushed."[24]  The wrong paper products, even those labeled as flushable, "attach to solids and clog the gravity system on their way to the pump stations, which causes backups of the pump stream," the spokesperson said.[25]  The cost is as simple as a couple of hours of a mechanic to get to the pump, shut it down and get the debris out.  However, if the entire pump needs to be replaced, the cost is much higher.  A Port St. Lucie Facebook post pleads people to throw wipes away: "septic tanks, grinder or STEP systems, and gravity systems are all susceptible to clogs and backups because of wipes:  Please help us maintain the integrity of our sewer system and always throw wipes away, even if they say 'flushable.'"[26]

---

[22]    Paul Rowan, *Flushable wipes causing headaches for sewer systems*, BEDFORD GAZETTE (Apr. 8, 2020), https://www.bedfordgazette.com/news/flushable-wipes-causing-headaches-for-sewer-systems/article_62590245-c32c-5bc6-a064-bbdb44d57c51.html.

[23]    *Id*.

[24]    Cheryl Smith, *Toilet paper alternatives clogging sewer systems; don't flush even 'flushable' wipes*, TCPALM (Mar. 27, 2020), https://www.tcpalm.com/story/news/local/2020/03/27/toilet-paper-substitutes-clog-sewer-system-dont-flush-flushables/2926015001/.

[25]    *Id*.

[26]    *Id*.

42.    In Rockwall, Texas, officials have stated that clogs caused by Flushable Wipes: "require the City's wastewater crews to shut down the pumps and manually remove the blockages in order to prevent wastewater from backing up into houses, businesses, and the environment. Removing these blockages can be not only time consuming, but costly to the City."[27]  Likewise, one public education mailer sent out to homeowners in Grand Rapids, Michigan, stated, "[c]onvenience wipes such as baby, hygienic, cleaning and disinfectant, as well as toilet bowl scrubbers and even paper towels might be labeled as 'disposable or flushable' but these items should not go down the drain. Products like these do not break down in the sewer system, causing plugs in sewer pipes and pumps, resulting in sewage backups, costly cleanups and environmental consequences that can result in rate increases."[28]  Also in Michigan, Macomb County said that it had been removing 4,000 pounds of wipes a week at one pump station.  Candice Miller, the Public Works Commissioner, blamed the problem on so-called flushable wipes failing to break down.[29]

43.    California's Water Board warned that anything other than toilet paper will "clog sewers and cause backups and overflows at wastewater treatment facilities."[30]  The Water Board advises consumers not to flush anything other than toilet paper down the toilet and instead to throw

---

[27]    *Texans Reminded Flushable Wipes Are Not Really Flushable And Shown The Consequences*, CBS LOCAL NEWS (Mar. 17, 2020), https://www.cbsnews.com/texas/news/texas-flushable-wipes-not-really-flushable-sewer-systems/.

[28]    *Environment Tip #3, Disposable, Not Flushable*, CITY OF GRAND RAPIDS, https://www.grandrapidsmi.gov/Government/Departments/Environmental-Services/Environmental-Tips#section-3 (last visited May 2, 2024).

[29]    *Not-so-flushable wipes cause big spill in small northern Michigan town*, THE DETROIT NEWS                                    (Oct. 17,                              2020), https://www.detroitnews.com/story/news/local/michigan/2020/10/17/baby-wipes-sewage-spill-beulah/114428928/.

[30]    *Coronavirus: State Water Board Warns 'Flushable' Wipes Could Clog Sewer Systems*, CBSN LOS ANGELES (Mar. 18, 2020), https://losangeles.cbslocal.com/2020/03/18/coronavirus-flushable-wipes-warning-sewer-system-clogs/.

them in the trash because the wastewater treatment plants may get overwhelmed with consumers having plumbing backups and blockages.  And the San Francisco Public Utilities Commission published a flyer that lists the top five things that should not be flushed, with flushable wipes as number one on the list: "The biggest headache for our wastewater treatment plants! Wipes are NOT biodegradable, and have to be manually removed from the equipment at our wastewater treatment plants and sent to the landfill."[31]

44.    The Water Pollution Control Facility in the city of Ottumwa, Iowa said in 2020 that wipes that are sold as "flushable" "are in fact not flushable" for the city's sewer pipes, cause cities to spend thousands of dollars on premature equipment repair and replacement, and can snag on sewer pipes, catch passing debris and grease, and create a "ball" that will grow to eventually plug the pipe.[32]  It also said that these wipes get drawn into sewer lines and wastewater treatment plant pumps and clog and damage the pumps.

45.    WSSC Water, which services 1,00 square miles in Prince George's and Montgomery counties in Maryland, issued a video in March 2020 to show "what has to be done at waste water treatment plants when the system gets clogged by both 'flushable' wipes and disinfecting wipes."[33]  Lyn Riggins, a WSSC Water spokeswoman, stated that it's easy to

---

[31]    *What Not to Flush*, SAN FRANCISCO WATER POWER SEWER, https://www.sfpuc.org/learning/water-pollution-prevention/what-not-flush (last visited May 2, 2024).

[32]    *Flushable Wipes Causing Problems in Sewer Pipes*, O! CITY OF OTTUMWA (Mar. 17, 2020), https://www.ottumwa.us/news/_flushable_wipes_causing_problems_in_sewer_pipes/.

[33]    John Domen, *Remember: 'Keep the wipes out of the pipes,' regional utility says*, WTOP NEWS (Mar. 20, 2020), https://wtop.com/local/2020/03/remember-keep-the-wipes-out-of-the-pipes-regional-utility-says/.

remember what to flush: "'Flush only the three "Ps",' she said, with the third one being toilet paper. "Nothing else. Keep the wipes out of the pipes.""[34]

46.    Defendant's Flushable Wipes are sold on Amazon.com and in Walmart stores across America, meaning their products end up in sewer systems in every state.  There are three Walmart stores within Plaintiff's sewer service area.

**Defendant Misrepresents Its Wipes as**
**"Flushable" in Marketing Materials and on Packaging**

47.    DUDE Wipes are marketed and sold by Defendant.  The packaging depicts, in large letters, "FLUSHABLE WIPES," and the Dude Products website states that DUDE Wipes are "[f]lushable wipes made with plant-sourced fibers."[35]  Product details and other representations on the websites of major retailers selling DUDE Wipes such as Amazon, Walmart, and Target, for example, also state that DUDE Wipes are "septic and sewer safe."  Additionally, Defendant represents on its packaging that DUDE Wipes are "EXTRA LARGE WIPES" or "XL WIPES," proclaiming on its website that they are "35% larger than your average flushable wipe," and made with 99% water.  Below are representations of recent packaging of DUDE Wipes-branded Flushable Wipes containing the "flushable" and other representations:

---

[34]    *Id*.

[35]    Available at: https://dudewipes.com/products/dude-wipes (last visited May 2, 2024).





48.     As confirmed by testing done by Plaintiff's Expert, *see supra* ¶26, DUDE Wipes badly failed IWSFG 2020: PAS 3 which requires a minimum of 80% dispersibility and, thus, cannot be considered "flushable" under the IWSFG standard, which is the industry's gold standard for flushability.

**Premoistened Non-Flushable Wipes Intended to Be**
**Thrown in the Trash Should Be Labeled as Non-Flushable**

49.     Premoistened, non-woven disposable wipes that are not designed to be flushed should be labeled clearly and conspicuously with the phrase "Do Not Flush" and a related symbol, to send a clear message to consumers that most wipes are not suitable for flushing.  The failure to do so exacerbates the problems suffered by STP Operators due to consumer confusion about which types of wipes, often marketed alongside one another, are suitable for flushing.

50.     The non-flushable products include: (1) premoistened nonwoven disposable wipes marketed as baby wipes or diapering wipes; and (2) premoistened nonwoven disposable wipes that are: (a) composed entirely of or in part of petrochemical-derived fibers; and (b) likely to be used in a bathroom and have significant potential to be flushed, including baby wipes, bathroom cleaning wipes, toilet cleaning wipes, hard surface cleaning wipes, disinfecting wipes, hand sanitizing wipes, antibacterial wipes, facial and makeup removal wipes, general purpose cleaning wipes, personal care wipes for use on the body, feminine hygiene wipes, adult incontinence wipes, adult hygiene wipes, and body cleansing wipes.

51.     Manufacturers, wholesalers, suppliers, retailers, and any other entity responsible for labeling such wipes should comply with "Do Not Flush," or similar, labeling options, while ensuring that the symbol and/or label notice is unobscured and has sufficiently high contrast with the immediate background of the packaging to render it likely to be seen and read by the ordinary individual under customary conditions of purchase and use.

## CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and

(b)(2) individually and as a class action on behalf of the following proposed classes:

**_South Carolina STP Operators Class:_** All STP Operators in South Carolina in whose systems Defendant's Flushable Wipes are flushed.

**_Nationwide STP Operators Class:_** All STP Operators in the United States in whose systems Defendant's Flushable Wipes are flushed.

53.    The South Carolina STP Operators Class and the Nationwide STP Operators Class

are referred to herein as the "Classes," and members of those classes are referred to herein as

"Class members."  Upon completion of discovery with respect to the scope of the Classes, Plaintiff

reserves the right to amend the Class definitions.  Excluded from the Classes is Defendant, its

parent, subsidiaries and affiliates, directors and officers, and members of their immediate families.

Also excluded are any entities in which Defendant has a controlling interest and any of the legal

representatives, heirs, or assigns of Defendant.

54.    <u>Numerosity</u>: The Classes are so numerous that joinder of all individual members is

impracticable.  While the exact number and identities of members of the Classes are unknown to

Plaintiff at this time and can only be ascertained through appropriate discovery, upon information

and belief, Plaintiff alleges that the Classes are comprised of thousands of individual members

geographically disbursed throughout the United States.  The number of Class members and their

geographical disbursement renders joinder of all individual members impracticable if not

impossible.

55.    <u>Commonality</u>: There are questions of fact and law common to members of the

Classes including, *inter alia*, the following:

(a)    whether Defendant mislabeled its Flushable Wipes so as to have consumers

believe that its Flushable Wipes will not cause harm to sewer systems in their area;

(b)    whether Defendant's business practices violate South Carolina law;

(c)    whether Defendant knew or should have known that the labeling on their Flushable Wipes was false, misleading or deceptive when issued;

(d)    whether Defendant misled consumers into believing that flushing their Flushable Wipes will not have adverse effects on sewer systems;

(e)    whether Defendant sells, distributes, or markets Flushable Wipes in South Carolina and nationwide that are in fact flushable;

(f)    whether Defendant's Flushable Wipes are safe for sewer systems; and

(g)    whether Plaintiff and Class members are entitled to injunctive relief.

56.    Typicality: Plaintiff's claims are typical of the Class members it seeks to represent. Plaintiff and all other Class members are likely to sustain similar future injuries, namely, clogging of their sewers or septic systems caused by Flushable Wipes, arising out of Defendant's course of conduct as described herein.

57.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Classes because Plaintiff's claims correspond with the claims of the other Class members.  Plaintiff is willing and able to vigorously prosecute this action on behalf of the Classes, and Plaintiff has retained competent counsel experienced in litigation of this nature.

58.    Plaintiff brings this action under Federal Rule of Civil Procedure 23(b)(2) because:

(a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Defendant;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making final declaratory and/or injunctive relief with respect to Class members as a whole appropriate.

59.    The undersigned counsel for Plaintiff and the Classes request that the Court appoint them to serve as Class counsel; first on an interim basis and then on a permanent basis pursuant to Federal Rule of Civil Procedure 23(g).  Undersigned counsel will fairly and adequately represent the interests of the Classes; have identified or investigated the Classes' potential claims; are experienced in handling class actions, other complex litigation, and claims of the type asserted in the action; know the applicable law; will commit sufficient resources to represent the Classes; and are best able to represent the Classes.

## COUNT I

## Nuisance

60.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

61.    Plaintiff and Class members have property rights and privileges in their sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment described herein, including those that have been and/or will be impaired by Flushable Wipes.

62.    The nuisance conditions caused, contributed to, maintained, assisted and/or participated in by Defendant substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff and Class members' rights to use and enjoy their sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment.

63.    Defendant's wrongful actions, as alleged herein, have interfered with Plaintiff and Class members' rights and property interests and their use and enjoyment of those rights and interests by causing clogs.  Once Flushable Wipes travel through sewer systems and sewage

treatment plants, they comingle, causing them to become fungible and facilitating/causing blockages.

64.    The wrongful activity of the Defendant, as alleged herein, results in excessive, unnecessary, and costly maintenance and repairs.  This includes additional proactive maintenance and the installation of expensive systems such as grinder pumps in an effort to reduce the impacts of Flushable Wipes.  Thus, the nuisance conditions caused, contributed to, maintained, assisted and/or participated in by Defendant have resulted in significant harm to Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment.

65.    The clogging of Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment alleged herein has varied and continues to vary over time.

66.    Defendant, which supplies, markets, distributes, delivers, and/or otherwise sells Flushable Wipes that are used, discharged, disposed of or otherwise flushed into Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment, engages in affirmative conduct, namely labeling the wipes as "flushable," that causes, contributes to, maintains and/or assists in the creation of the nuisance alleged herein.

67.    Defendant was or should have been aware that the flushing of Flushable Wipes would result in, among other harms, significantly clogging of sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment.

68.    As a direct and proximate result of Defendant's actions as alleged herein, Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment are clogged by buildups of Flushable Wipes as they continuously comingle and accumulate to form blockages.  As a direct and proximate result of Defendant's acts and

omissions as alleged herein, Plaintiff and Class members will continue to incur costs and expenses related to the investigation, treatment, remediation and monitoring of problems due to the flushing of Flushable Wipes.

## COUNT II

### Trespass

69.     Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

70.     Plaintiff and Class members own, possess and actively exercise their rights to appropriate and use their sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment described herein, including those that have been and will be clogged by Flushable Wipes.

71.     It is Defendant's intention when selling Flushable Wipes that the public flush them down their toilets, and they actively encourage customers to flush them by labeling them as "flushable."  This conduct is the actual and proximate cause of Flushable Wipes' invasion into Plaintiff and Class members' property, including sewer lines, pump stations, lift stations wastewater treatment plans and other waste disposal equipment owned and/or operated by Plaintiff and Class members.  The damage to Plaintiff and Class members' property is the direct result of Defendant's intentional conduct.

72.     By designing wipes that do not disperse in a reasonable amount of time and encouraging consumers to flush them, Defendant is a substantial factor causing the ongoing damage to Plaintiff and Class members' property, and is responsible for the injuries and damage being caused by the following affirmative conduct:

(a)     Defendant participates in the improper flushing of Flushable Wipes by intentionally instructing consumers about the purportedly proper disposal methods for Flushable Wipes, including instructing users to dispose of Flushable Wipes directly into the toilet and

intentionally, recklessly, and/or negligently calibrating, designing and manufacturing Flushable Wipes in such a manner which causes them to be routinely flushed into toilets. As a result of this activity, Flushable Wipes clog Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment, and otherwise intrude upon and affect Plaintiff and Class members' possessory interests;

(b)    Defendant intentionally instructs consumers about the disposal of their Flushable Wipes through product labels; advertisements funded, published, and distributed by Defendant; and through other literature. Defendant recommended and continue to recommend that Flushable Wipes be flushed down the toilet notwithstanding that Defendant knows or should know that Flushable Wipes clog sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment, posing a significant problem for Plaintiff and Class members. As a result, when Flushable Wipes were and are disposed of in toilets pursuant to the techniques recommended by Defendant, they clog and otherwise intrude upon and damage Plaintiff and Class members' property;

(c)    At all relevant times Defendant: (1) knew and/or reasonably should have known, and continues to know, that Flushable Wipes cause property damage; and (2) had either not conducted adequate testing to determine the potential effects Flushable Wipes had on plumbing and sewer systems or unreasonably interpreted any such testing they had conducted. Even though Defendant had sufficient information to determine that Flushable Wipes posed a threat to properly functioning sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment, they did not modify their disposal instructions or provide the appropriate advice, instruction or information to consumers regarding proper disposal and use needed to avoid build up and clogging of said sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment; and

(d)      Defendant knew or should have known that Flushable Wipes clog sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment. Defendant instructed, requested and/or induced these acts (and continue to do so) and is a substantial factor in causing the resulting harm to Plaintiff and Class members' possessory interests, and further aid and abet this conduct.

73.    The damage done to Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment alleged herein has varied and continues to vary over time.

74.    Plaintiff and Class members have not consented to, and do not consent to, the invasion of their property by Flushable Wipes. Based on Plaintiff and other Class members' public statements and requests for the public to stop flushing Flushable Wipes, Defendant knows or reasonably should know that Plaintiff and Class members do not consent to this trespass.

75.    As a direct and proximate result of Defendant's acts and omissions as alleged herein, Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment are damaged by Flushable Wipes, causing Plaintiff and Class members to incur investigation, treatment, remediation and monitoring costs and expenses.

### COUNT III

### Strict Products Liability – Defective Design

76.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

77.    Defendant distributes, promotes, markets and/or sells Flushable Wipes products designed and/or marketed to break up and be safe for use in household and public sewer conveyance and treatment systems.

78.    Consumers use Flushable Wipes in a reasonably foreseeable manner and without substantial change in the condition of such products.

79.     Because Flushable Wipes do not conform to the definition of "flushable," they are unreasonably dangerous and unfit for their intended use.  Defendant knew, or should have known, that the use of Flushable Wipes in their intended manner results in the clogging and disruption of sewer lines, pump stations, lift stations, waste disposal equipment, and wastewater treatment plants.

80.     Defendant's products, which are flushed down toilets and then enter Plaintiff's septic system, are defective in design and unreasonably dangerous, are not designed or adequately designed to break down, and therefore are mislabeled as "flushable."  Defendant's wet wipes result in the direct or indirect harm to Plaintiff and Class members' sewer lines, pump stations, lift stations and wastewater treatment plants because: (a) Defendant did not focus on dispersibility when designing their Flushable Wipes, thus ignoring the only definition of "flushable" that would make the wipes "safe for sewer and septic systems"; and (b) Defendant's design of their Flushable Wipes products causes them to comingle and become fungible as they flow through a sewer system, making them a significant or primary cause of clogging and disruption of sewer lines, pump stations, lift stations and wastewater treatment plants owned and/or operated by Plaintiff and Class members.

81.     At all times relevant to this action, including presently:

(a)     Defendant was aware of the typical waste and disposal practices resulting from the intended use of their Flushable Wipes products;

(b)     Defendant was aware of the extended time needed for Flushable Wipes to break down.  Despite such knowledge, Defendant intended their Flushable Wipes to be used in such a manner that would result in clogs and disruptions of sewer systems, pump stations, lift stations and wastewater treatment plants;

(c)    Defendant should not have labeled the products as "flushable" because they failed to design their Flushable Wipes products to appropriately break down, causing a continuous problem for pipes, sewers, treatment plants, pumps and/or other wastewater or sewage equipment;

(d)    Defendant knew, or should have known, of appropriate redesigns and/or modifications to protect against the clogging associated with flushing anything stronger than toilet paper, especially a tightly woven wet wipe, down the toilet.  Defendant negligently and/or consciously disregarded this knowledge and failed to redesign and/or modify the Flushable Wipes;

(e)    Defendant represented to consumers and the general public that the Flushable Wipes products they sold would degrade into harmless substances and would not cause clogging or other harm to sewer lines, pump stations, lift stations and wastewater treatment plants. At the time these representations were made, Defendant knew, or should have known, these representations were false, misleading, and/or that there was no reasonable basis to believe that they were true;

(f)    Flushable Wipes cause clogging of the sewer lines, pump stations, lift stations and wastewater treatment plants owned and/or operated by Plaintiff and Class members when they are used and disposed of by consumers pursuant to Defendant's recommended application and disposal procedures set forth on product packaging, advertisements, oral statements and other means of communication; and

(g)    The Flushable Wipes manufactured by Defendant are defective products, are not designed to break down, and therefore are mislabeled as "flushable," because, among other things: (1) Defendant's Flushable Wipes cause extensive damage to the plumbing of sewer lines, pump stations, lift stations and wastewater treatment plants; (2) the continued use of Defendant's Flushable Wipes poses a significant threat to private and public waste disposal systems; (3) Defendant fails to provide adequate warnings of the known and foreseeable risk of the use of

Flushable Wipes; and (4) Defendant fails to conduct adequate scientific studies to evaluate the effects of flushing Flushable Wipes on sewer lines, pump stations, lift stations and wastewater treatment plants.

82.     The above-described defects in Defendant's Flushable Wipes product existed when the Flushable Wipes left Defendant's possession, and still exist today.

83.     Defendant's Flushable Wipes are and will continue to be harmful to an extent beyond that which would be contemplated by the ordinary consumer.  The risk of harm to sewer lines, pump stations, lift stations and wastewater treatment plants posed by Flushable Wipes outweighs and will continue to outweigh the cost to the Defendant of reducing or eliminating such risk.

84.     As a direct and proximate result of the defects alleged herein, certain of Plaintiff and Class members' sewer lines, pump stations, lift stations and wastewater treatment plants have been clogged with Flushable Wipes and will likely be clogged again.

85.     As a direct and proximate result of Defendant's acts and omissions as alleged herein, Plaintiff and Class members will incur investigation, treatment, remediation and monitoring costs and expenses related to the effect of Flushable Wipes on Plaintiff and Class members' sewer lines, pump stations, lift stations and wastewater treatment plants.

86.     Plaintiff is informed, believes and alleges that as a further direct and proximate result of the acts and omissions of Defendant alleged herein, Plaintiff and Class members will sustain substantially increased expenses and loss of the use of their sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment, causing them significant injury and damage.  Plaintiff and Class members are also entitled to costs and prejudgment interest as permitted by law.

87.    Defendant acted and continues to act maliciously, wantonly, recklessly and with conscious disregard of the known risks of injury to others, including Plaintiff and Class members.

## COUNT IV

### Strict Products Liability – Failure to Warn

88.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

89.    Defendant designs, manufactures, formulates, promotes, markets and/or distributes Flushable Wipes products.

90.    Defendant's Flushable Wipes are used by consumers in a reasonably foreseeable manner and without substantial change in the condition of such products, and Defendant knows that consumers purchase and use Flushable Wipes without inspection for defects.

91.    Defendant is aware that the use of Flushable Wipes purchased or otherwise acquired (directly or indirectly) from them would result in their Flushable Wipes being flushed down toilets and subsequently entering sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment owned and/or operated by Plaintiff and other Class members.

92.    Defendant knew or should have known that if their Flushable Wipes did not break down quickly enough, significant clogging of Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment occurs, making the product unreasonably dangerous.

93.    Despite the known and/or foreseeable risk of clogging sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment associated with the use of Flushable Wipes, Defendant failed to provide adequate warnings to consumers and other users or to take any other precautionary measures to mitigate those hazards.

94.    Defendant failed to describe such dangers or provide any precautionary statements regarding such hazards in the labeling of their Flushable Wipes products.

95.    As a direct and proximate result of Defendant's failure to warn of the dangers posed by flushing Flushable Wipes, certain of Plaintiff and Class members' wastewater equipment have been and will continue to be clogged by Flushable Wipes.

96.    As a direct and proximate result of the Defendant's acts and omissions as alleged herein, Plaintiff and Class members incur investigation, treatment, remediation and monitoring costs and expenses related to the clogging of sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment by Flushable Wipes.

## COUNT V

### Negligence

97.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

98.    Defendant has a duty to use due care in the handling, control, disposal, sale, labeling, and instructions for use and disposal of Flushable Wipes to prevent clogging of Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants, and/or waste disposal equipment with Flushable Wipes.

99.    Defendant negligently, carelessly, and recklessly handles, labels, instructs, controls, markets, promotes and/or sells Flushable Wipes products and/or negligently recommend disposal techniques for Flushable Wipes products.  As a result, they directly and/or proximately cause Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants, and/or waste disposal equipment to become clogged by Flushable Wipes.

100.    As a direct and proximate result of Defendant's acts and omissions as alleged herein, Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment

plants, and waste disposal equipment become clogged after Flushable Wipes enter sewer systems and sewage treatment plants.

101.    As a direct and proximate result of Defendant's acts and omissions as alleged herein, Plaintiff and Class members incur costs and expenses related to the clogging of sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment caused by Flushable Wipes, including costs and expenses associated with unclogging, investigating, treating, remediating and monitoring such clogs and otherwise maintaining sewage systems free from the buildup of Defendant's Flushable Wipes.

102.    For the reasons set forth and specifically alleged above, Defendant is acting maliciously, wantonly, recklessly and with conscious disregard of the known risks of injury to others, including Plaintiff and Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and all others similarly situated, prays for relief and judgment against Defendant as follows:

A.    An order certifying the Classes under the appropriate provisions of Federal Rule of Civil Procedure 23, as well as any appropriate subclasses, and appointing Plaintiff as a representative of the Classes and the undersigned counsel as Lead Counsel to represent the Classes;

B.    An order declaring Defendant's practices to be improper, unfair, unlawful and/or deceptive;

C.    An order enjoining Defendant from marketing and selling their Flushable Wipes as "flushable" until their labeling is truthful or otherwise not deceptive;

D.    An order enjoining Defendant from marketing and selling their Flushable Wipes as being safe for sewer systems until their labeling is truthful or otherwise not deceptive;

E.    An order enjoining Defendant from marketing and selling their Flushable Wipes as

being biodegradable until their labeling is truthful or otherwise not deceptive;

F.      An order enjoining Defendant from marketing and selling their Flushable Wipes as capable of breaking down during or after flushing until their labeling is truthful or otherwise not deceptive;

G.      An order seeking appropriate labeling changes to Defendant's non-flushable products to avoid confusion and further damage to the Classes;

H.      An order for pre- and post-judgment interest to the Classes, as allowed by law;

I.      An order for reasonable attorneys' fees and costs to counsel for the Classes if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Classes; and

J.      Granting such other and further relief as is just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  May 9, 2024

AQUALAW PLC
F. PAUL CALAMITA (ID #12740)

_F. Paul Calamita_

F. PAUL CALAMITA

6 South Fifth Street
Richmond, VA  23219
Telephone:  804/716-9021
804/716-9022 (fax)
paul@aqualaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
VINCENT M. SERRA
FRANCIS P. KARAM
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
vserra@rgrdlaw.com
fkaram@rgrdlaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, F. Paul Calamita, hereby certify that on May 9, 2024, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

_____

F. PAUL CALAMITA